**IN THE UNITED STATES COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FILED
SCRANTON
JUL 17 2026
PER ______ DEPUTY CLERK

| | | |
|---|---|---|
| **RAKEISH COTTON,** **Plaintiff** | : | **CIVIL ACTION** |
| **v.** | : | **JUDGE**__________ |
| | : | |
| **C. BANKS, K. ECKENROD, J. RIVELLO, C. LOY, M. GOSS, AND N. SMITH,** **Defendants** | : | **NO.** 1:26-CV-2003 DEMAND JURY TRIAL |

## CIVIL COMPLAINT

## I. INTRODUCTION

1. The Plaintiff, Rakeish Cotton, a state prisoner, files the following civil rights action for damages pursuant to 42 U.S.C. § 1983, alleging a danger created by state officials involving assault by other prisoners, a failure to protect the plaintiff from assault, and deliberate indifference to both the risk and the outcome; all in violation of his rights under the Eighth Amendment to the United States Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution . The plaintiff also alleges both loss and damage of personal property as relative to and a direct result of the aforementioned Eighth and Fourteenth Amendment violations.

## II. JURISDICTION & VENUE

2. The plaintiff seeks relief for violations of rights protected by the Eighth and Fourteenth Amendments to the United States Constitution 42 U.S.C § 1983.

3. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the state law claims (regarding property loss) pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as the events giving rise to the claims occurred in the Middle District.

## III. PARTIES

5. The plaintiff, Rakeish Cotton is currently housed at SCI Huntingdon, 1100 Pike Street, Huntingdon, PA 16654, and was housed at SCI Huntingdon at the time of the events described below.

6. Defendants, C. Banks, K. Eckenrod, J. Rivello, C. Loy, M. Goss, and N. Smith are correctional employees at Huntingdon. Each is sued in his or her individual capacity.

7. Both C. Banks and K. Eckenrod were a part of Huntingdon's B-Unit management team at the time of the events described below.

8. Defendant C. Banks is a unit manager employed at Huntingdon. He is sued in his individual capacity.

9. Defendant K. Eckenrod is a counselor employed at Huntingdon He sued in his individual capacity.

10. Defendant J. Rivello is Huntingdon's Superintendent/Facility Manager and supervisor of all correctional staff at Huntingdon. He is sued in his individual capacity.

11. Defendant M. Goss is a unit manager employed at Huntingdon. She is sued in her individual capacity.

12. Defendant C. Loy is the Major of Unit management at Huntingdon, who assigns unit managers to unit posts and supervises their adherence to policy and procedure. She is sued in her individual capacity.

13. Defendant N. Smith is a correctional officer (C/O II) who was assigned post on D-Unit on September 25, 2025. He is sued in his individual capacity.

## IV. FACTS

14. Background: As a result of intestinal surgery from multiple gunshot wounds, the plaintiff suffers from fecal incontinence. The triggering of the plaintiff's condition while double-celled resulted in an inordinate number of cellmates with whom hostile altercations would rapidly accelerate to violent exchange. To remove the plaintiff from the risk of serious bodily injury or death, the plaintiff's housing status was converted to single cell Program Code-Z (hereinafter "Z-Code") in September of 2021.

a. Z-Code Status:

15. The criteria for Single Celling Program Code "Z" classification include mental health disorders (DC-11.2.1 C(a) 1-5; certain medical conditions (DC-11.2.1 C(b)); observation evidence that a prisoner may be victimized by cellmates (DC-11.2.1 C(c)); and necessary isolation of prisoners with documented histories of aggressive, predatory, or assaultive behavior towards cell partners.

16. A prison's Program Review Committee (PRC), a unit manager or a shift commander may temporarily assign a Z-Code pending a full assessment.

17. Processing a prisoner for conversion begins with a DC-46 Vote Sheet that is circulated through key departments such as a Prisoner's unit management team, a prison's security department, and finally, the facility manager/superintendent. The staff action and rationale for Z-Code housing is documented on form DC-14, all of which is submitted for approval from the Department of Corrections Central Office.

18. The rationale underlying the plaintiff's approval for Z-Code housing in 2021 was to remove the plaintiff from risk of being assaulted by or being forced to assault a cellmate in self-defense.

b. State-Created Danger

19. On or around June 9, 2025, the plaintiff met with defendant K. Eckenrod, in defendant Eckenrod's office, for an annual review, where defendant

Eckenrod inquired about the nature of the plaintiff's Z-Code status. Without divulging the details of his condition, the plaintiff explained that his medical condition caused fights with cellmates. Defendant Eckenrod made no further inquiries.

20. Based on information provided by defendant Eckenrod, on June 9, 2025, Defendant C. Banks forwarded an e-mail to Huntingdon's medical department to learn the "medical basis" of the plaintiff's Z-Code status, specifically to discover whether it was sanctioned by or through Huntingdon's Corrections Health Care Administrator (CHCA).

21. On or around June 9, 2025, defendant C. Banks received a response from medical personnel that (1) there was no medical sanction in support of the plaintiff's Z-Code, (2) that the health care provider had issued the plaintiff adult pull-ups from August of 2021 to August of 2022, (3) that the plaintiff "rarely comes to medical", and (4) that the plaintiff had not requested renewal of supply for pull-ups since August of 2022. Thus began defendant C. Banks's campaign to remove/delete the plaintiff's Z-Code status.

22. Because Defendant C. Banks and Defendant Eckenrod assumed the plaintiff's Z-Code status had been medically sanctioned but did not meet the criteria for such, both defendants sought to nullify the rationale for the plaintiff's Z-Code status by casting doubt on the veracity of the plaintiff's

condition. Armed with evidence of the plaintiff's lack of visits to treatment lines for pull-ups, on or around June 9, 2025, defendant C. Banks initiated a DC-46 Vote Sheet, in which he retro applied information regarding a lack of support from the Corrections Health Care Administrator to the basis of the plaintiff's Z-Code status in order to have it removed, where no such support had been required for or applied to its approval in 2021.

23. On June 30, 2025, defendant J. Rivello removed/deleted the plaintiff's Z-Code.

24. On July 2, 2025, Defendants C. Banks and Eckenrod together met the plaintiff in their joint office on B-unit. Defendant Eckenrod held a printed chronology of the plaintiff's visits to treatment lines (for pull-ups). Both defendants questioned the plaintiff about the details of his condition, and cited the plaintiff's lack of visits to treatment lines as a means to compel the plaintiff to explain the absence of visits, and to describe the effects to his medical condition.

25. Defendants C. Banks and Eckenrod did not notify the plaintiff that his Z-Code status had been removed; but instead gave the impression that its removal was still pending and dependent on whether the plaintiff could make a case for retention of it by divulging the details of his condition.

26. Removal of the plaintiff's Z-Code had no basis: Defendants C. Banks and Eckenrod learned that approval for the plaintiff's Z-Code in 2021 involved

no medical sanction; therefore it required no such support for its retention. Thus the plaintiff's visits to treatment lines, or lack thereof, were irrelevant, i.e., did not suffice as cause or justification to delete the plaintiff's Z-Code.

27. Invasion of the plaintiff's right to medical privacy (on July 2, 2025) served no administrative purpose, as (1) the plaintiff's Z-Code had no connection to the prison's health care provider, and (2) the facility manager had already deleted the plaintiff's Z-Code.

28. In processing the vote sheet to remove the plaintiff's Z-Code, defendant C. Banks disregarded/omitted the foremost premise of its approval in 2021: that the plaintiff was at risk of being assaulted by or having to assault a cellmate, i.e., danger of serious/grave bodily injury or death while also at risk of being forced to inflict serious bodily harm on an attacker that could lead to his or his attacker's death.

29. On July 3, 2025, the plaintiff forwarded a request slip (DC-135) to (then acting) Deputy Superintendent, W. House, describing both defendant C. Banks' and Eckenrod's intentions, and describing the rationale behind his approval for Z-Code status in 2021.

30. Because neither Defendant C. Banks nor Defendant Eckenrod notified the plaintiff that his Z-Code status had been removed, the plaintiff filed grievance # 1155996 in an attempt to prevent its removal. The plaintiff's

grievance described the history of his condition and the events that led to his approval for single-cell status in 2021. The plaintiff also warned that he was at risk of injury or death for reasons stated above.

31. Huntingdon's Grievance Coordinator (M. Fultz) rejected grievance # 1155996: the plaintiff had yet to be harmed, thus the grievance coordinator held that the "Grievance does not indicate that [the plaintiff] [was] personally affected by a department or facility action or policy."

32. On July 11, 2025, the plaintiff wrote the Regional Deputy for the Department of Corrections in an attempt to involve impartial oversight regarding rejection of the plaintiff's grievance. In the letter the plaintiff explained that the risk of further harm, including the prevention of harm yet to befall the plaintiff, had been established in 2021 when the plaintiff was approved for a Z-Code, and that to compel the plaintiff to again prove he is at risk demonstrates improper use of a policy that indeed personally affects the plaintiff. The office of the Regional Deputy forwarded the plaintiff's letter to the Chief Secretary of Grievance Appeals.

33. On August 14, 2025, defendant J. Rivello upheld rejection of the grievance.

34. On October 9, 2025, the Chief Secretary of Grievance Appeals upheld the rejection.

c. First Incident/Assault

35. On August 25, 2025, the plaintiff was transferred to a double cell. At around 8:00 that evening an argument over the plaintiff's condition having triggered led to a fight between the plaintiff and his cellmate. As the two fought the plaintiff was shoved into a desk over which the left side of his rib cage collided. As officers walked by the cell for count, the plaintiff took a swing at the cellmate. Officers witnessed the latter part of the exchange, intervened, and escorted the plaintiff to the Restricted Housing Unit (RHU).

36. On August 27, 2025, the plaintiff pled guilty to fighting, was sentenced to 15-days in the RHU, and was fined $25 for sanitation of blood and bodily secretion (Blood and Body clean-up).

37. Before and after August 25, 2025, defendant C. Banks was aware that the plaintiff was Z-Coded to prevent disasters such as the above. There was no reason to disturb the plaintiff's single-cell status: what the plaintiff's medical condition caused (fights) is what necessitated it rather than the medical condition per se.

38. Defendant C. Banks' efforts to place the plaintiff in danger were beyond the limit of his official capacity, especially after he learned that neither Huntingdon's Correctional Health Care Administrator nor its medical department had a role in the plaintiff's approval for a Z-Code. The plaintiff

avers that Defendant C. Banks acted with misfeasance in his individual capacity.

39. Rather than independently investigate what Defendant C. Banks misrepresented, Defendant J. Rivello found it sufficient as cause to remove/delete the plaintiff's Z-Code.

40. Defendant J. Rivello is personally involved as (1) by removing the plaintiff's Z-Code under the pretense presented by Defendant C. Banks, Defendant J. Rivello participated directly in the violation of the plaintiff's Eighth Amendment right not to be subjected to cruel and unusual punishment, and the plaintiff's Fourteenth Amendment right to Substantive Due Process; and (2) Defendant J. Rivello failed to remedy the wrong after being informed of the constitutional violations through reports from personnel and through several grievance appeals.

41. Defendant J. Rivello was grossly negligent in supervising subordinates who committed the wrongful acts that describe the cause of action here.

42. In failing to act on the information that indicated those unconstitutional acts had occurred/were occurring, Defendant J. Rivello was deliberately indifferent to the misfeasance of his subordinates, and to the violation of the plaintiff's Eighth and Fourteenth Amendment rights. Thus Defendant J. Rivello acted in his individual capacity in having demonstrated such willful disregard, and was a key element to the danger created where none

would have otherwise existed had the plaintiff's Z-Code been left undisturbed.

43. The plaintiff avers that (1) the harm ultimately caused was foreseeable: (a) the plaintiff had already been Z-Coded for 4 years, the above rationale established in 2021, and (b) the 8/25/25 fight made the risk obvious.

44. The plaintiff avers that (2) the state actor(s) acted with a degree of culpability that shocks the conscience: (a) both defendant C. Banks and Eckenrod acted with misfeasance, as both used their official duties to commit unlawful acts, specifically invasion of the plaintiff's private medical information and then use of that information to form a false premise (regarding support for Z-Code retention) as a basis for its removal; (b) the plaintiff's condition is considered a disability under the Americans with Disabilities Act (42 U.S.C. § 12102(1)-(2). In creating the dangers the plaintiff faced and deliberately refusing to intervene after the 8/25/25 incident, all of the Defendants sought to persecute the plaintiff for his disability.

45. The plaintiff avers that (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of Defendant C. Banks' and Defendant Eckenrod's acts, as the plaintiff is a member of a discrete class of persons (a state prisoner) subject to the potential harm

brought about by the actions of Defendant C. Banks, Defendant Eckenrod, and Defendant J. Rivello.

46. The plaintiff avers that (4) Defendant C. Banks, Defendant Eckenrod, and Defendant J. Rivello used their authority in a way that created a danger to the plaintiff that rendered the plaintiff more vulnerable to danger than had the state actors not acted at all.

d. Failure to Act/Failure to Protect/Deliberate Indifference

47. On September 5, 2025, the plaintiff filed grievance #1166365. Defendant C. Banks and Defendant Eckenrod applied provision (b) of Administrative Policy DC-11.2.1 to disqualify the plaintiff's medical condition as outside the strict criteria for retention of or qualifying factor for a "medical" Z-Code, or a medically-sanctioned Z-Code.

48. Defendant C. Banks misrepresented the premise of the plaintiff's Z-Code status to his supervisors, Defendants J. Rivello and C. Loy, in extending the implication that the plaintiff's Z-Code status had been erroneously processed in 2021 under a medical guise. This was not only to justify the effort to remove it, but also to prevent its reinstatement despite the fact its approval had never issued under a "medical" rationale.

49. Instead of investigating the matter independently, Defendant Rivello and Defendant Loy adopted the false premise Defendant C. Banks presented.

50. On September 7, 2025, the plaintiff forwarded request slips to (then acting) Deputy Superintendent, W. House, to Huntingdon's Program Review Committee (PRC), and to RHU-assigned psychologist, M. Price, explaining all of the above, and warning each party that the plaintiff's Z-Code approval in 2021 had not been based on the criteria of policy 11.2.1 (C)(1)(b), but 11.2.1 (C)(1)(c) and (d); and that citing the plaintiff's ineligibility for a "medical" Z-Code would not shield the plaintiff from assault, nor would it prevent the plaintiff from assaulting a cellmate in self-defense.

51. The Deputy Superintendent's response: "Noted"; the PRC representative's response: "You are responsible for your actions ..."

52. The RHU-assigned psychologist issued misconduct #F451170, charging the plaintiff with "Using Abusive Language" and "Threatening Another Person." The Hearing Examiner dismissed the former; the plaintiff pled guilty to Threatening Another Person and was sentenced to an additional 15-days in the RHU.

53. In grievance #1166365 of September 5, 2025, the plaintiff reasoned that approval for his Z-Code in 2021 had to do with violent altercations with cellmates, referring specifically to the August 25, 2025 fight as an example.

54. The plaintiff's request for relief was to have his Z-Code status reinstated. On September 23, 2025, Defendant Loy, the officer appointed to respond, held that the grievance was frivolous, as in lacking arguable basis in law, fact, and/or policy/procedure.

55. Defendant Loy disregarded the true rationale underlying the plaintiff's Z-Code and adhered to the false premise that it depended on or required medical support to retain or reinstate, as if the medical criteria were the only route to the plaintiff's eligibility, and the criteria succeeding DC-11.2.1 (C)(1)(b) did not exist. The plaintiff also reasoned that Defendant Loy's reliance on 11.2.1 (C)(1)(b) would not function as a shield against assault.

56. Defendant Loy's disregard for the plaintiff's having been involved in a fight with a cellmate (over his condition) on 8/25/25 proves a failure to protect the plaintiff from a foreseeable harm. Defendant Loy's, Defendant Goss', and Defendant J. Rivello's foreknowledge that the plaintiff faced a risk of grave injury or death demonstrates their deliberate indifference. All three defendants had an official duty to protect the plaintiff from further harm; therefore each acted in his her individual capacity to deliberately disregard the danger the plaintiff would ultimately face on October 2, 2025.

57. As the D-Unit manager at the time of the incidents in question, Defendant Goss was aware of what had occurred on 8/25/25; and, by 9/22/25,

learned that the plaintiff's Z-Code status had been removed, learned what caused the 8/25/25 incident, and learned the underlying history of the plaintiff's condition.

58. On September 23, 2025, the plaintiff's cellmate, Reginald Welch QP-3924, stepped in fecal matter left in the wake of the plaintiff's sanitation effort in darkness, as not to disturb Mr. Welch while he slept. Mr. Welch notified D-Unit morning shift Sergeant Nelson of the plaintiff's condition while carrying proof in what was lodged in his sneaker sole.

59. Defendant M. Goss conferred with Defendant Banks and Defendant Eckenrod, and afterward refused to discuss the plaintiff's housing dilemma with the plaintiff.

60. On September 23, 2025, Mr. Welch filed a grievance over his being forced to share a cell with the plaintiff, and was awarded a cell transfer on September 24, 2025.

61. On September 25, 2025, the plaintiff's next cellmate, Reginald Childs, QP1411, immediately complained of a strong fecal odor, requested cleaning supplies and cell assignment elsewhere.

62. Defendant N. Smith, the sergeant on post, called the plaintiff to the officer's station, and ordered the plaintiff to clean whatever was causing the odor. The plaintiff explained that there was nothing to clean; the odor

simply lingered from his condition, and that the speedy placement of one cellmate after another left little time to properly sanitize.

63. Defendant Smith ordered the floor officer to search the plaintiff's personal property for strategically-hidden fecal matter, and threatened to issue the plaintiff a misconduct if the officer found any.

64. The officer ran gloved hands outside the toilet bowl and inside the toilet bowl rim, over and under the surfaces of the double bunk and the desk, and then searched the plaintiff's property.

65. That evening (September 25, 2025) the plaintiff filed grievance #1169685 to report the speculative search and to show the collective effort by each of the Defendants to persecute the plaintiff over his condition for its repellant nature to cellmates. The search was neither routine nor a procedural step along the course of an official investigation, but rather an effort to justify the running implication that the plaintiff had magnified the effects of his "condition" as a ploy for reinstatement of his Z-Code status.

66. On September 26, 2025, the plaintiff met with Defendant Goss and Defendant Eckenrod in the D-Unit "hearing room." Though Defendant Eckenrod was no longer assigned as the plaintiff's unit counselor, he began the meeting by informing the plaintiff that "medical" would not support the reinstatement of the plaintiff's Z-Code status. Defendant Eckenrod then referred to medication for the plaintiff's condition

prescribed to the plaintiff on August 4, 2025, whose supply is scheduled for refill every 30 days. The plaintiff had to request renewal of supply from from the RHU, as the plaintiff could not appear at medication lines in person while in the RHU from 8/25/25 to 9/22/25. Regardless of the particulars, Defendant Eckenrod again obtained the private record of the plaintiff's visits to medication lines, found no record of the plaintiff's request for a refill, and then relayed that information to Defendant Goss. This was to imply that the plaintiff had refused the medication, and to cast doubt on the severity/veracity of the plaintiff's condition.

67. Defendant Eckenrod continued to invade the plaintiff's private medical record, and relay the information to Defendant Goss in an effort to extend the misrepresentation that the plaintiff's Z-Code status depended on support from the prison's health care administrator and that the plaintiff's refusal to cooperate with medical personnel was the reason his Z-Code status was deleted.

68. Defendant Eckenrod's presence at the meeting proves that he continued to provide information to Defendant Goss to cast doubt on the plaintiff's condition. Defendant Goss then relayed the implication to Defendant Smith on September 25, 2025.

69. The plaintiff avers, Defendants C. Banks, K. Eckenrod, C. Loy, M. Goss, and N. Smith endeavored collectively to persecute the plaintiff because the

effects of the plaintiff's disability were repellant to cellmates. Defendants C. Banks, and J. Rivello placed the plaintiff in danger despite the rationale underlying the plaintiff's approval for a Z-Code in 2021. Defendants Loy and Goss failed to act after the plaintiff was assaulted on 8/25/25, and failed to protect the plaintiff from being assaulted on 10/2/25. Defendant Smith subjected the plaintiff to an unwarranted search based on the above speculative conclusion. In the totality of events from June 9, 2025, to October 2, 2025, the administrative purpose of official procedure collapsed under the false premise initiated by Defendant C. Banks. Thus each Defendant acted in his or her individual capacity.

70. On September 26, 2025, upon conclusion of the meeting with Defendant Goss and Defendant Eckenrod, Defendant Goss asked the plaintiff to step into the hallway outside of D-Unit. Minutes after, officers arrived to handcuff and escort the plaintiff to the RHU.

71. The plaintiff was placed in administrative custody under the pretense that the plaintiff had stated he "felt threatened by other prisoners" to Defendant Goss.

72. Because the plaintiff uttered nothing of the sort, the plaintiff appealed his RHU placement, was released on October 1, 2025, and again housed on D-Unit.

e. Failure to Protect/Second Assault

73. On October 2, 2025, an altercation with a cellmate over the effects of the plaintiff's condition led to a brutal exchange of blows. The plaintiff was shoved, punched in the face, and kicked in the back with so much force, he lost sensation in his left leg. The plaintiff struck his attacker who exited the cell. Though both the plaintiff and his cellmate were treated for injuries and placed in the RHU, no misconduct issued to report the details of the incident, but a DC-802 A.C. status form reports suspicion of the plaintiff's involvement in a "disturbance."

f. Deliberate Infliction of Emotional Distress

74. After the plaintiff's conversion to Z-Code status in 2021, the plaintiff's condition/disability remained a private matter. In June of 2025, Defendant C. Banks and Defendant Eckenrod exposed it to their colleagues and their superiors in an effort to suggest a circumstantial change that would warrant a change in the plaintiff's housing status.

75. From June 9, 2025 to October 2, 2025, the plaintiff's condition/disability became a running punchline among the Defendants and all personnel involved indirectly.

76. The plaintiff suffered through humiliation based on facts presented in paragraphs 54-75.

77. The plaintiff suffered sleep deprivation over fear of his condition triggering while double-celled and anxiety-based insomnia in the interim between placement in double-cells for fear of being injured or killed.

78. The plaintiff did not seek counsel for fear that he would be further punished (issued a misconduct) for confessing his fears and frustrations brought about by the probability he might be compelled to assault a cellmate in self-defense.

79. Before August 25, 2025, a formal misconduct had not been issued against the plaintiff since 2007 (18-years). The misconducts issued against the plaintiff on 8/25/25 and 9/8/25 were a direct result of the needless removal of plaintiff's Z-Code status, which the plaintiff avers was processed under the false premise formed and relayed by both Defendant C. Banks and Defendant Eckenrod.

80. The plaintiff was unjustly placed in restricted housing on three occasions as a result of the above events, which would have been avoided had (1) the plaintiff's Z-Code status been left undisturbed, or (2) had Defendant J. Rivello, Defendant Loy, or Defendant Goss intervened after 8/25/25.

81. For having confessed his frustrations and his dilemma to the RHU psychologist, the plaintiff was issued a second misconduct for which he was sentenced to an additional 15-days in the RHU on the final day of his sentence for the 8/25/25 misconduct.

g. Loss of Property

82. As a result of the above violations of the plaintiff's Eighth and Fourteenth Amendment Rights, and as a matter of the procedural processing of a prisoner's property, several items of the plaintiff's property were lost, stolen, and damaged between September 26, and October 1, 2025; and October 2, and October 15, 2025.

83. After placement in restricted housing, a prisoner's property is transported from the cell the prisoner occupied to RHU storage.

84. From point-A, the prisoner's cell, to point-B, RHU storage, several factors may contribute to the loss or damage of one's property, such as, (a) misplacement, e.g., misattribution of property to cellmates, where items are transposed between them; (b) theft, e.g., Huntingdon officers delegate the separation and packing of a prisoner's property to unit (inmate) workers who may steal items; (c) transition during transport to or from Huntingdon's RHU: a prisoner's property is left unattended in a cart on D-unit before the unit's rear exit threshold where there are no surveillance cameras, from which prisoners are escorted along a path through the RHU yard leading to the RHU entry port.

85. Within the first week of RHU placement, a prisoner is escorted to the storeroom to verify the contents of his personal property, per procedural administrative policy DC-153.

86. Inventory officers list each property item verified by a prisoner on a DC-153 Property Inventory Sheet, after which the officers activate all electronic devices in the presence of the owner to acknowledge functionality or a lack thereof. Upon verification of property ownership and function, a prisoner signs a DC-153 Property Inventory Sheet.

87. Between September 26, 2025, placement in the RHU to release on October 1, 2025, the plaintiff's property was not inventoried via DC-153 property sheet. Eight (8) electronic cigarettes were stolen from the plaintiff's property, which amounts to $47.60.

88. Between the plaintiff's October 2, 2025 placement in the RHU and release on October 15, 2025, the plaintiff's property was not inventoried. Several items were missing and the plaintiff's keyboard was damaged. The items missing: (1) gooseneck lamp purchased in 2005, for which the plaintiff rejected compensation. Huntingdon staff offered $15.05 for a "book light" (available through purchase from commissary). The plaintiff purchased the lamp in 2005. Because the plaintiff had ownership permit under the grandfather clause, the plaintiff requested a replacement of the same make and model – or $50,000.

89. Items missing (cont.): four (4) boxes of detergent; one (1) Long Johns (top), one (1) Long Johns bottom; one (1) towel; two (2) (cans) ZYN nicotine pouch that totaled in sum $46.96, and all available through commissary.

90. Two control knobs were removed from the plaintiff's keyboard. The plaintiff requested a replacement of the same make and model (or $50.000) in grievance #1173189.

V. Injuries Sustained

91. Invasion of the plaintiff's private medical record lost its administrative basis the moment Defendants C. Banks and K. Eckenrod learned that there was no medical permit attached to the plaintiff's single-cell status. Because Defendant C. Banks and Defendant Eckenrod continued to relay information regarding the plaintiff's condition to their superiors and colleagues, the information was disseminated among all staff in proximity and the prisoner population. The plaintiff suffered humiliation after the first assault on 8/25/25, and each day leading to the second assault on 10/2/25.

92. On October 2, 2025, the plaintiff was punched in the face and kicked in his lower back. The plaintiff was prescribed pain medication on October 3, 2025, and offered a steroid injection if the numbness in his left leg (apparent sciatic nerve impact) did not subside. To date the plaintiff's legs partially lose sensation if the plaintiff stands or sits for prolonged periods.

93. The emotional distress the plaintiff suffered is described in paragraphs 75 through 81.

## VI. Causes of Action

### COUNT ONE

Against Defendants C. Banks, K. Eckenrod, and J. Rivello

State-created Danger in Applying a False Premise to a Z-Code Removal

94. Described by reference in paragraphs 19 through 73. Defendants C. Banks, K. Eckenrod, and J. Rivello foresaw the harm ultimately caused, all three acted with a degree of culpability that shocks the conscience, a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendants acts as a member of a discrete class of persons subjected to the potential harm brought about by the state's action, and all three defendants affirmatively used authority in a way that created a danger to the plaintiff or that rendered the plaintiff more vulnerable to danger than had the defendants not acted at all.

### COUNT TWO

Against Defendants J. Rivello, C. Loy, and M. Goss

Failure to Protect the Plaintiff from a Foreseeable Harm

95. Described by reference in paragraphs 35 through 73. The second assault described in paragraph 73 would have been prevented if Defendant Rivello, or Loy, or Goss had used their authority to intervene before October 2, 2025.

COUNT THREE

Against all Defendants

Deliberate Indifference

96. Described by reference in paragraphs 19 through 92.

COUNT FOUR

Against All Defendants

Deliberate Infliction of Emotional Distress

97. Described by reference in paragraphs 75 through 81.

COUNT FIVE

Against All Defendants

Loss and Damage of Personal Property

98. Described by reference in paragraphs 83 through 90. If not for the violations of the plaintiff's constitutional rights, the plaintiff's personal property would have been neither damaged, lost, nor stolen.

Demand For Relief

**WHEREFORE,** the plaintiff requests that this Honorable Court:

**A.** Award compensatory damages to the plaintiff from each defendant;

**B.** Award punitive damages to the plaintiff from each defendant;

**C.** Award costs of this action to Plaintiff;

**D.** Award compensatory/monetary damages to the plaintiff for his having suffered;

**E.** Award punitive damages to the plaintiff for the plaintiff's emotional distress.

**F.** Award any further relief this court may consider appropriate.

**G.** Plaintiff also seek a jury trial on all issues triable by jury.

VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the above facts are true and correct.

R. Cotton

Rakeish Cotton FA 3334
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16654

Date: 6/23/26

CERTIFICATE OF SERVICE

The Plaintiff, Rakeish Cotton, declares under penalty of perjury pursuant to 28 U.S.C. § 1746, that he forwarded copies of this § 1983 Civil Rights Complaint to each named defendant at 1100 Pike Street, Huntingdon, PA 16654, through certified U.S. Mail.

R. Cotton

Rakeish Cotton FA3334
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16654

Date: 6/23/26

Rakeish Cotton FA3334
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16654

INMATE MAIL
PA DEPARTMENT
OF CORRECTIONS

POSTAGE
$ 012.65⁰

USMS X-RAY

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT of PENNSYLVANIA
235 NORTH WASHINGTON AVENUE
P.O. Box 1148
SCRANTON, PA 18501-1148

RECEIVED
SCRANTON
JUL 17 2026
PER DJ
DEPUTY CLERK